# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edgar De Jesus Rivera Sanchez, | No. CV-25-04424-PHX-SHD (MTM) |
| Petitioner, | **ORDER** |
| v. | |
| Kristi Noem, et al., | |
| Respondents. | |

In its December Order to Show Cause, the Court directed Respondents to show cause why the Petition should not be granted.[1]

Petitioner is a citizen of Columbia who entered the United States in November 2024 with his wife. (Doc. 1 ¶ 2.) Petitioner was apprehended by border patrol and then released on an Order of Recognizance and directed to appear before an Immigration Judge in 2025. (*Id.*) On June 24, 2025, Petitioner appeared for his first immigration court hearing, at which DHS moved to dismiss immigration proceedings without prejudice. (*Id.* ¶ 3.) Following the proceeding, Petitioner was arrested and taken into immigration custody where he remains.[2] (*Id.* ¶ 4.)

---

[1] After the Petition was fully briefed, Petitioner filed a Motion for Temporary Restraining Order seeking immediate release (Doc. 19.) Respondents did not respond to the Motion.

[2] Petitioner further alleged he suffered a traumatic brain injury in 2017, which left him with permanent disabilities and mental health conditions that make it difficult to walk and communicate. (Doc. 1 ¶ 1.) Petitioner was also diagnosed with schizophrenia and bipolar disorder, which require antipsychotics and antidepressants to manage, and he alleged he is not receiving appropriate treatment in immigration detention. (*Id.* ¶ 17.)

Petitioner alleged his rearrest and detention without any procedural process violated his procedural and substantive due process rights. In its Order to Show Cause ("OSC"), the Court cited several cases that held immigration petitioners are entitled to a hearing prior to arrest and redetention when DHS exercised its discretion to release them on their own recognizance. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *see also Y.M.M. v. Wamsley*, No. 2:25-02075, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025); *Ramirez Tesara v. Wamsley*, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *5, __ F. Supp. 3d __ (W.D. Wash. Sep. 12, 2025); *E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *2–6, __ F. Supp. 3d __ (W.D. Wash. Aug. 19, 2025); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest in their freedom).

In their response, Respondents do not dispute Petitioner was released on an order of recognizance and received no process before his redetention. Rather, Respondents maintain "a pre-detention hearing is an improper extra-statutory remedy to which Petitioner is not entitled and due process does not require." (Doc. 14.) In support of that argument, Respondents do not contend Petitioner does not have a liberty interest in his release. Rather, Respondents cite several cases for the proposition that "[t]he law does not require a hearing before arrest." (Doc. 14 at 3.) But, as noted by Petitioner, those cases are inapposite and address situations where a noncitizen is arrested by police with respect to potential criminal charges. Respondents did not address the cases cited by the Court in its OSC or squarely address whether Respondents created a liberty interest when they released Petitioner on his own recognizance, thereby triggering an entitlement to due process before being redetained.

Respondents do address the three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). *Mathews* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As to the first factor, Respondents contend "Petitioner does not have a cognizable liberty interest in a pre-detention hearing." But that is not the appropriate interest at issue — "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

As to the second factor, Respondents believe that Petitioner's ability to seek a bond hearing following his redetention is sufficient to protect his liberty interest. The Court disagrees for at least two reasons. First, a post-detention bond hearing does not address why Respondents believed it was necessary to redetain Petitioner in the first instance. The order releasing Petitioner on his own recognizance (Doc. 1-1 at 6) includes a blank section in the event the order is "cancelled."



(*Id.*)  Respondents make no argument Petitioner violated the conditions of his release or was taken into custody to effectuate his removal.  It would be a hollow process indeed if individuals could be redetained without cause then have the burden to establish their entitlement to release over and over.  Second, even assuming a post-detention bond hearing could be considered sufficient process, the Court has little confidence Respondents would not contend Petitioner is subject to mandatory detention under 1225(b)(2)(A) as it has in nearly every immigration case filed in recent months.

Finally, as to the third *Mathews* factor, Respondents' focus is on the burden to the Government in providing a pre-deprivation remedy.  But as cited above in *Ortega* "[i]f the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  415 F. Supp. 3d at 970.  Further, detention hearings in immigration courts are commonplace and impose a "minimal cost."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  In addition, here, Respondents' interest is even lower because Petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, and there is no indication Petitioner violated any condition of his release.  *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025).

The Court finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing before he was redetained.  *See J.E.H.G. v. Chesnut*, 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk.  Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").  "The only potential injury the government faces is a short delay in detaining [Petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that [his] detention is necessary to prevent danger to the

community or flight." *Pinchi*, 792 F. Supp. 3d at 1037-38.  For all these reasons, the Petition will be granted, and Petitioner will be ordered released from custody immediately.

**IT IS THEREFORE** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is granted as to his due process claim in Count One.  Count Two is denied as moot.

**IT IS FURTHER ORDERED** Respondents must immediately release Petitioner from custody under the same conditions that existed before his detention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within two business days of Petitioner's release.

**IT IS FINALLY ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 12th day of January, 2026.

_____
Honorable Sharad H. Desai
United States District Judge